DAVIDOFF HUTCHER & CITRON, LLP
*Proposed Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
(212) 557-7200
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 21-10795 |
| L&L WINGS, INC., | |
| Debtor. | |

-------------------------------------------X

**DECLARATION OF ARIEL LEVY PURSUANT TO LOCAL
BANKRUPTCY RULE 1007-2 AND 9077-1 IN SUPPORT OF A HEARING
ON SHORTENED NOTICE ON THE DEBTOR'S FIRST DAY MOTIONS**

ARIEL LEVY, under penalties of perjury, hereby declares and states as follows:

1.    I am the President and currently the sole officer of L&L Wings, Inc. (the "Debtor") and I submit this Declaration pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York and pursuant to Local Rule 9077-1 in support of the Debtor's motions and applications filed substantially simultaneous with this Declaration (the "First Day Motions").

# PART I

## **BACKGROUND**

2.      Since 2004, I have been involved in managing and/or assisting with the financial affairs of the Debtor. I am currently the President of the Debtor.

3.      In 2004 I received my Bachelor of Science in Business Administration with honors from Boston University with dual concentrations in Finance and Operations Management. Thereafter I began full-time, continuous employment at the Debtor through the present. I have been involved in many aspects of the company including merchandising, information technology, accounting, finance, human resources, and legal. My current active duties include the following: oversight of the daily cash position; preparation of internal reports, budgets, and forecasts; decision making with third party accountants for complied financial statements and tax returns; supervision of our enterprise resource planning computer system, accounts payable disbursements authorizations; negotiations with lenders and landlords; and management of the office staff for the smooth functioning at the office and warehouse.

4.      The Debtor was founded in 1978 by my father Meir Levy and his brother Shaul Levy, who are each 50% shareholders of the Debtor, for the purpose of developing retail stores focusing on beachwear and beach sundry items. Meir and Shaul are former directors and officers of the Debtor but are currently only shareholders. Bernard A. Katz was appointed as sole and independent director of the Debtor in March, 2021.

5.      The Debtor is a corporation organized under the laws of South Carolina but manages its operations at 666 Broadway, 8th Floor, New York, New York 10012.

6.      The Debtor operates under the tradename, trademark, and service mark WINGS. When it started its business in 1978, it started under the WINGS name.  Subsequently in 1993, it

entered into a license agreement with Shepard Morrow that related to this name. Debtor maintains this license agreement expired and/or was terminated by its terms, and additionally, permitted the Debtor to acquire federally registered trademarks. Upon such information and belief, the Debtor applied to register the mark WINGS with the US Patent and Trademark Office ("USPTO"). The Debtor currently has two WINGS marks registered on the Principal Register at the USPTO: (1) Reg. No. 3,458,144 for retail apparel, clothing, and discount store services; and (2) Reg. No. 4,193,881 for beach towels, men's, women's, and children's clothing, and retail store services. The Debtor continues to use the mark WINGS to this day.

7.  The Debtor currently operates 26 stores throughout North Carolina, South Carolina, Florida, Texas and California and has achieved annual sales in excess of $30 million over the past several years leading up to 2021.

8.  The Debtor leases its stores from a combination of unaffiliated, third party landlords and affiliates owned by entities or partnerships in turn owned by Meir and Shaul Levy.

9.  Sometime in or around 2011, a dispute arose between the Debtor and a former employee and his company to whom the Debtor, in 2005, had licensed the mark and tradename WINGS thereby permitting the operations of similar beachwear stores under the adapted name "Super Wings".

10. In 2011, the former employee's company, Beach Mart Inc. ("BMI"), commenced an action in the United States District Court for the Eastern District of North Carolina against the Debtor seeking various causes of action and damages and claiming various breaches of the underlying license agreement between the parties.

11. On November 16, 2020, a jury verdict was rendered in the District Court Action in favor of BMI and against the Debtor, awarding damages to BMI against the Debtor of

$4,184,135 for each cause of action asserted by BMI.

12. On March 25, 2021, the Court issued a decision and order with judgment against the Debtor in the approximate amount of $16,000,000 along with findings that the Debtor's interest in the WINGS mark under the Morrow license terminated and the Debtor's own registration of the WINGS mark was void. It is further possible that the District Court may award the plaintiff significant legal fees to be added to the judgment.

13. Due to the substantially increased size of the judgment in comparison to the verdict, the Debtor, which vigorously disputes the verdict and judgment and intends to appeal the judgment, does not have the financial wherewithal to bond the impending appeal.

14. In addition, if the judgment were enforced and executed upon, it would lead to the likely cessation of the Debtor's business and forced liquidation of its assets.

15. Accordingly, on April 24, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization in this Court.

16. The Debtor intends to utilize the Chapter 11 process to appeal and/or resolve the judgment, restructure its debt, seek out new capital or other strategic transactions and liquidate the claims of BMI so that a Plan of Reorganization can be filed within a reasonable amount of time. The Debtor is confident that proceeding in Chapter 11 is in the best interest of the Debtor, its estate, and the creditors as a whole.

17. The needs and interests of the Debtor's creditors will best be served by the continued possession of its property and management of its affairs as a debtor in possession under Chapter 11 until a restructuring plan can be formulated and presented to creditors.

## PART II

## INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007

18.     In addition to the foregoing, S.D.N.Y. Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

**Local Rule 1007-2(a)(1)**

19.     The Debtor is headquartered at 666 Broadway, 8th Floor, New York, New York 10012. Established in 1978, the Debtor owns and operates retail beachwear and beach sundry item stores in 5 states.

**Local Rule 1007-2(a)(2)**

20.     This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*(the "Bankruptcy Code").

**Local Rule 1007-2(a)(3)**

21.     Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

22.     A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in §101(31) of the Bankruptcy Code is annexed hereto as **Schedule I**.

**Local Rule 1007-2(a)(5)**

23.     The Debtor has 1 secured creditor who asserts a blanket lien on all of the Debtor's assets: TD Bank, which has a line of credit facility under which there is currently no balance owed. The Debtor has other secured creditors with respect to certain equipment financing. A schedule of the Debtor's secured creditors ins annexed hereto as **Schedule II**.

**Local Rule 1007-2(a)(6)**

24.     A summary of the Debtor's assets and liabilities is annexed hereto as **Schedule III.**

**Local Rule 1007-2(a)(7)**

25.     There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

26.     None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

27.     The Debtor leases the office space at 666 Broadway, 8th Floor, New York, New York, 10012 pursuant to a written lease agreement which expires on June 30th, 2026.

**Local Rule 1007-2(a)(10)**

28.     The Debtor's books and records, IT systems and managerial staff are located at the Debtor's offices at 666 Broadway, 8th Floor, New York, New York.

**Local Rule 1007-2(a)(11)**

29.     The following litigation is pending against the Debtor:

*Beach Mart, Inc. v. L&L Wings, Inc.,* U.S. District Court, Eastern District of North Carolina, Northern Division, Index No. 2:11-CV-44-FL. The Debtor is in the process of appealing the judgment recently entered in the District Court.

**Local Rule 1007-2(a)(12)**

30. I am currently the sole officer of the Debtor.

31. The Debtors' Board of Directors currently consists of one director, which director is independent, in that he is not a shareholder or related or affiliated with the Debtor's shareholders in any way. His name is Bernard Katz, a long time bankruptcy and insolvency professional well known to these courts. Mr. Katz has the sole authority to make critical business decisions for the Debtor.

**Local Rule 1007-2(b)(1) and (2)**

32. The Debtor currently has approximately 250 employees, which figure will likely increase to 300 in May as the Debtor is in its "busy" season.

33. The Debtor's estimated payroll and payments to officers, shareholders and directors for the thirty (30) day period following the Chapter 11 petition is $165,000.

34. The Debtor's estimated payroll to employees for the thirty (30) day period following the Chapter 11 petition is approximately $672,000.

**Local Rule 1007-2(b)(3)**

35. A schedule including for the 30-day period following the filing of the chapter 11 petition, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees is annexed as **Schedule IV**.

# PART III

## AFFIDAVIT IN SUPPORT OF HEARING ON SHORTENED NOTICE ON THE DEBTOR'S FIRST DAY MOTIONS PURSUANT TO LOCAL BANKRUPTCY RULE 9077

36. Contemporaneously with this Chapter 11 filing, the Debtor expects to file a number of motions and applications (the "First Day Motions"), including but not limited to:

   i. Debtor's Motion To Pay Pre-Petition Wage Claims, Etc. (the "Critical Labor Motion");

   ii. Debtor's Motion For Authority To Use Cash Collateral and Provide Adequate Protection Therefor to TD Bank, N.A. (the "Cash Collateral Motion");

   iii. Debtor's Motion To Continue Use of Bank Accounts and Cash Management System (the "Cash Management Motion"); and

   iv. Debtor's Motion To Compel Utilities To Continue to Provide Service and Provide Adequate Protection Therefor (the "Utilities Motion");

   v. Debtor's Motion to Continue Insurance Practices (the "Insurance Motion");

   vi. Debtor's Motion To Pay Certain Pre-Petition Taxes (the "Tax Motion"); and

   vii. Debtor's Motion For Order Establishing Procedures For Payment of Monthly Compensation and Reimbursement of Expenses of Professionals (the "Monthly Fee Motion").

37. I submit that the relief requested in the First Day Motions should be heard and determined on an expedited basis in order to allow the Debtor to continue its normal business operations without any interruption, which interruption that could severally detriment the Debtor's ability to successfully reorganize.

A. The Critical Labor Motion

38. The Critical Labor Motion seeks authority to pay a portion of the pre-petition wages due to the Debtor's employees, together with the post-petition wages for that pay period

on the next pay date, which is April 29, 2021.

39. The Debtor's employees are critical and necessary for the Debtor's ongoing operations and ability to continue to develop its software products. Should the Debtor be rendered unable to pay its employees their wages as scheduled, there would be irreparable harm caused to the employee morale and possible loss of employees. Should this happen, the Debtor's reorganization efforts would certainly be impaired.

B.     The Cash Collateral/Motion

40. The Debtor is also seeking authority to use cash collateral in which TD Bank may assert a security interest pursuant to the pre-petition line of credit arrangement between the Debtor and TD Bank. During the Chapter 11 case, it is anticipated that the Debtor will seek to continue financing under a modified lien of credit arrangement subject to further documentation and application to the Court.

41. It is necessary to obtain immediate authority for the Debtor's continued use of TD's cash collateral in order for the Debtor to sustain operations and pay ongoing overhead and necessary expenses throughout the course of the Chapter 11 case.

C.     The Cash Management Motion

42. The Debtor requests authority to continue to use its multiple and various types of bank accounts that are part of its consolidated cash management system.

43. Such relief will avoid unnecessary disruption of financial services and cash flow issues that would be created by having to close the Debtor's pre-petition bank accounts and open new DIP accounts.

D.     <u>The Utilities Motion</u>

44.     The Debtor requires protection of its utility accounts and continued services in order to void any disruption of business operations.

45.     In exchange for compelling the utilities to continue to provide services to the Debtor, the Debtor shall establish a segregated security deposit account equal to one months' total utility costs in order to provide adequate protection to the utility providers.

E.     <u>The Insurance Motion</u>

46.     The Debtor requests authority to continue its insurance practices, policies and insurance premium financing arrangements to avoid any disruption or lapse in coverage.

F.     <u>The Tax Motion</u>

47.     The Debtor requests that it be permitted to make certain tax payments that may overlap between the pre-petition and post-petition periods to avoid the unnecessary imposition of penalties or interest for payments that may technically not come due until after the Petition Date.

G.     <u>The Monthly Fee Motion</u>

48.     The debtor requests that it be permitted to make monthly payments to its duly retained professionals, as the Debtor requires significant representation and assistance from its professionals especially during the first few critical months of the Chapter 11 case. The Debtor believes it will have sufficient resources to make the monthly payments without adversely affecting the Debtor's finances or operations.

49.     Thus, for the foregoing reasons, I believe that good cause exists to have an emergency hearing on the First Day Motions which typically requires a minimum of twenty-one (21) days' notice as provided for in Federal Rule of Bankruptcy Procedure 2002 and 6003.

50.     I have reviewed each of the First Day Motions and the facts set forth there in are true and correct to the best of my knowledge, information and belief.

## CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: April 24, 2021

                                                                */s/ Ariel Levy*
                                                                Ariel Levy